# EXHIBIT C

Sunday, September 28, 2014 6:09:37 PM Eastern Daylight Time

**Subject:** FW: Connolly, Geaney, Ablitt & Willard
**Date:** Tuesday, December 17, 2013 6:04:46 PM Eastern Standard Time
**From:** John Connolly Comcast
**To:** Larry Scofield, Steven Ablitt, Bob Feige, Kevin Duyon

Hi,

I sent this follow up email to Todd and Michelle. I trust that you will understand why you were not cc'd on the original email to them.

Jay

**From:** jay connoilly [mailto:john.connolly4@comcast.net]
**Sent:** Tuesday, December 17, 2013 6:04 PM
**To:** 'Barton, Todd'; 'Michelle_Davenport@fanniemae.com'
**Cc:** 'Kevin Geaney'; 'Rachelle Willard'
**Subject:** Connolly, Geaney, Ablitt & Willard

Good Afternoon Todd and Michelle:

I appreciate the opportunity to talk with both of you this morning regarding Connolly, Geaney, Ablitt & Willard, P.C. (the "Firm") and our desire be permitted to expand the scope of the services our Firm provides to include Fannie Mae files.

Obviously, we are keenly interested in being approved by Fannie Mae and remain willing to participate in further discussions if you feel they are warranted.

There were two issues raised by Attorney Barton in the course of our discussion that I would like to address.

First, a question was raised regarding, I believe, the 2012 tax return of the Firm and expressly expenses that were described referral and technology fees. I was unsure as to why these expenses were incurred and/or to what they related. I have now inquired of Mr. Robert Feige, the CFO and COO of the Firm, and have been informed that these expenses represent fees paid to Lender Processing Services (LPS) for the Firms participation in the service that LPS provides to lenders, servicers and their legal counsel.

The other matter relates to the change in management and ownership of the Firm. We started our discussion on this issue with the present status and operating structure in which Attorneys Ablitt and Scofield are no longer officers or directors of the Firm; and, now hold only non-voting shares. All voting shares of stock the Firm are held by me, Attorney Kevin Geaney and Attorney Rachelle Willard. We are also the Firm's only official officers and directors.

During our discussion it seemed to me that you understood that the exchange for non-voting stock was a device to provide the new management group with the full legal power to run the Firm and permit the changes without burdening the Firm's balance sheet with large liabilities.

However, Attorney Barton also asked me about a letter that I had sent in late May wherein I described the divestiture of ownership interests of Attorneys Scofield and Ablitt. To explain the difference I felt a little history of the process might help.

The thought of restructuring of the Firm was in many ways developed around me. I was hospitalized from May 4th through May 11th with endocarditis; and, the plan evolved during that time period. Shortly after I

got home the idea was presented to me and I was asked to assume the role that I now have.

During the week of May 13th through a series of emails and telephone calls the then officers, directors and shareholders of Ablitt/Scofield all unanimously consented to a scenario in which Attorneys Scofield and Ablitt would sell their shares to the Firm and they would be replaced as officers and/or directors.

The changes in the officers and directors were implemented right way and, functionally, Attorneys Ablitt and Scofield ceased to have and/or exercise any shareholder voting powers. The details of the arrangement were to be worked out over time and, as to some participants, with the advice of outside private counsel. It was suggested that I undertake to paper the deal and refine the terms.

Unfortunately, my recovery took months with me receiving strong antibiotics intravenously on as 24/7 basis for approximately nine (9) weeks. My ability to do productive works was compromised over a period of 3 months. Then, when I was able to address the ownership and structural changes to the Firm that had been authorized, it became immediately obvious to me that burdening the Firm with substantial debt would likely have negative impacts the Firms financial standing prospectively. So, I proposed the approach of trading voting stock for non-voting stock. After some more review and input from the participants and their counsel the transaction based upon the non-voting stock ownership was reduced to paper in that form.

I look forward to hearing from either or both of you if you have any other matters that you wish to discuss.

I also look forward to hopefully being notified by our clients that our Firm has been approved by Fannie Mae as it has been by Freddie Mac.

All the best,

Jay

John Connolly, Jr.
Connolly, Geaney, Ablitt & Willard, P.C.
304 Cambridge Road
Woburn, MA 01801
781-246-8995
Cell: 978-828-0370
jconnolly@acdlaw.com
john.connolly4@comcast.net