UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**CONNOLLY GEANEY ABLITT &**                          Chapter 7
**WILLARD, P.C.,**                                    Case No. 14-14164-JNF
    Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~


# MEMORANDUM


Whereas, on February 23, 2016, this Court, pursuant to the Second and Renewed Motion for Order of Contempt against Durham Commercial Capital Corp. ("Durham") filed by Stewart F. Grossman, Chapter 7 Trustee ("Trustee"), determined that the Trustee was entitled to an award of attorneys' fees relating to Durham's failure to comply with a 2004 subpoena for the production of documents and the Order entered by this Court on December 22, 2015; and

Whereas, on March 23, 2016, this Court directed the Trustee to set forth his request for fees in accordance Fed. R. Bankr. P. 2016; and

Whereas, the Trustee complied with the Court's order and filed a "Request for Fees Pursuant to Award of Fees to be Paid by Durham Capital Corp. (the "Request for Fees"), together with an itemization of the fees incurred with reference to the date the

1

services were performed, the identity of the professional performing the services, a description of the services, the amount of time spent performing the tasks described, and the total amount of fees incurred; and

Whereas, in his Request for Fees, the Trustee sought Court approval for the payment of $45,287.00 by Durham; and

Whereas, according to the Trustee, the fees of $45,287.00 are based on a total of 97.7 hours of professional time and reflect a blended hourly rate of $463.53; and

Whereas, according to the Trustee, the amount of time spent and the fees incurred by his counsel related to 1) drafting the Second and Renewed Motion for Order of Contempt (the "Motion for Contempt"), which according to the Trustee was "an extensive project" given the number and variety of Durham's discovery deficiencies at the time the Motion for Contempt was filed on August 7, 2015;[1] 2) reviewing Durham's Opposition to the Motion for Contempt and proposal to continue the initial hearing, which the Court had scheduled for September 16, 2015, to enable the parties to reach a consensual resolution, which Opposition and proposal required Trustee's counsel to confer with Durham's counsel and draft a motion to continue the hearing; 3) conferring

---

[1] On September 1, 2015, ServiceLink NLS, LLC ("ServiceLink") filed a Joinder to the Chapter 7 Trustee's Second and Renewed Motion for Order of Contempt pursuant to which it joined in and adopted the Trustee's Motion for Contempt. In its Joinder, it noted that, on April 27, 2015, the Trustee, Durham, Santander Bank, N.A. ("Santander") and Ocwen Loan Servicing, LLC ("Ocwen") filed a Stipulation and Order that addressed the rights of Santander, Ocwen, and any subsequent movants to participate in the Trustee's examination of Durham or obtain documents produced in response to the subpoena. On September 11, 2015, the Court permitted ServiceLink to join the Trustee's Motion for Contempt.

2

with Durham's counsel on the eve of the rescheduled hearing on October 21, 2015, which led to the drafting and filing of a consensual order; 4) receiving documents produced by Durham on November 20, 2015, the last date for production under the agreed order, and reviewing Durham's Motion for Further Protective Order under Rule 2004, as well as drafting, filing an Opposition to the Motion for Further Protective Order, and preparing a Status Report on the remaining deficiencies in Durham's production; 5) attending the hearing on December 16, 2015, at which the Court took the Motion for Contempt under advisement, and reviewing the Court's December 22, 2015 order; 6) reviewing the affidavit of the president of Durham, Craig L. McGrain ("McGrain"), and the additional documents produced by Durham in preparation for the next scheduled hearing, as well as drafting and filing a further Status Report on January 28, 2016; and 7) receiving additional documents from Durham on the eve of the next scheduled hearing, i.e., February 23, 2016, including documents that McGrain incorrectly stated did not exist, and attending and arguing at that hearing, at which the Court found Durham to be in violation of its order and indicated its intention to award sanctions that are now the subject of the Trustee's Request for Fees; and

 Whereas, Durham filed an Opposition to the fees sought by the Trustee pursuant to his Motion for Contempt, arguing that the fees were incurred for services that 1) are beyond the scope of the February 23, 2016 order (it maintains the fees should be limited to attendance at hearings); 2) are unreasonable; and 3) are disproportionate in view of the facts and circumstances of the case and in connection with the conduct of Durham and the production disputes; and

Whereas, Durham further argued that the fees sought by the Trustee are punitive and not compensatory; and

Whereas, Durham contended that 1) the Trustee's counsel performed services and seeks fees that are lumped together, making review of their reasonableness impossible; 2) the Trustee seeks recovery for fees for services performed by two or three partner-level time-keepers, evincing duplication of efforts; and 3) the Trustee seeks recovery for fees incurred in his capacity as trustee, which by any statutory commission he may earn; and

Whereas, Durham also contended that "the Trustee has now incurred more than $500,000 in professional fees in what remains a 'no asset' case and he is clearly looking to Durham as a life-line for recovery of some measure of those fees;" and

Whereas, Durham argued that this Court must analyze the necessity and benefit of the fees incurred under the standards referenced in cases such as Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enters., Inc.), 997 F.2d 1321, 1323 (10th Cir. 1993), and then determine whether the amount sought is reasonable, using a lodestar calculation; and

Whereas, Durham cited 11 U.S.C. § 330(a) and Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 69 (1st Cir. 2012)("The section 330 factors mirror those encapsulated in the traditional lodestar approach to calculating attorneys' fees."), and In re Wolverine Proctor & Schwartz, LLC, No. 06-10815-JNF, 2012 WL 3930360 (Bankr. D. Mass. Sept. 10, 2012), aff'd, 527 B.R. 809 (D. Mass. 2015), observing that the Court is not required to accept the number of hours itemized, may reduce those hours for excessive

4

time spent, and may make an independent determination of the reasonableness of hours devoted to the case; and

Whereas, Durham argued it is unreasonable for the Trustee to seek payment of his fees in his capacity as his own counsel, particularly where, for the most part, those fees were incurred in instances in which the Trustee was one of three partners from his firm performing the same task,[2]

Now, therefore, the Court rules as follows.

The Court has determined that Durham is in civil contempt for its failure to fully and timely comply with the Court's order dated February 13, 2015, granting the Trustee's Motion for Order Directing Examination of Keeper of Records of Durham and Compelling Production of Documents Pursuant to Fed. R. Bankr. P. 2004 and is entitled to reasonable compensation for the services performed in obtaining information pertinent to his statutory duties set forth in 11 U.S.C. § 704. *See* Weimar Invs., Inc. v. First Fin. Bank, N.A. (In re Pekrul), 2013 WL 3942970 (B.A.P. 9th Cir. July 22, 2013). To the extent that Durham insists that it has attempted to be cooperative, and that it has a "target on its back," the Court concludes that those complaints are not germane to a determination of the amount of fees that should be payable to the Chapter 7 Trustee for the services performed by his counsel in obtaining compliance with the Court's order, especially because the Court made findings that Durham violated the order.

---

[2] Durham notes that at two of the three hearings, the Trustee was simply an observer and at the third hearing, the Trustee provided a status report at the Court's prompting in his capacity as Trustee.

5

Nevertheless, the Court concludes that the fees incurred by Trustee's counsel are disproportionate to Durham's production transgressions. Specifically, the Court's review of the time records of Trustee's counsel unequivocally establishes that two senior attorneys, as well as the Trustee, were heavily involved in the matter, when one might have sufficed with minimal input from the others, leading to duplication of effort. In addition, the time records reflect insufficient delegation to junior attorneys for certain tasks, such as the filing of a motion to continue for which the compensation requested is in excess of $980. Indeed, the professionals identified in the Trustee's Request for Fees with the lowest hourly rates billed for just 1.6 hours, while the attorney with the second highest hourly rate billed for 58.8 hours. While this Court did not intend to limit the award of attorneys' fees to the Trustee to attendance at hearings, as to do so would not fairly compensate the Trustee and the bankruptcy estate for reasonable attorneys' fees in obtaining compliance with this Court's order, the itemization of time entries demonstrates both a lumping of tasks together, as well as the assignment of multiple professionals to attend meetings and hearings, contributing to excessive fees.[3]

The importance of adequate descriptions of the time spent on each task set forth in the itemization of services cannot be overstated as those descriptions enable the Court to review the reasonableness of the compensation requested for tasks performed. Courts

---

[3] References to J. Miller in the time records would appear to be to James D. Miller, an attorney in the law firm of Babst, Calland, Clements and Zomnir, P.C., a Pittsburgh, Pennsylvania law firm representing ServiceLink. *See* Motion for Admission of James D. Miller, Non-Resident Attorney, to Appear *Pro Hac Vice* (Doc. # 299).

have reduced requests for attorneys' fees because of poor time entries which contain lumped or vague descriptions of services, particularly where the time spent involves inter-office conferences, conferences with other attorneys, and in email exchanges, and the reason for, or substance of, the communication cannot readily be ascertained. *See, e.g.,* In re Digerati Techs., Inc., 537 B.R. 317, 333 (Bankr. S.D. Tex. 2015) (bankruptcy court reduced fee award because time entries for emails were not adequately described); In re Fibermark, Inc., 349 B.R. 396 (Bankr. D. Vt. 2006) (court was unable to determine benefit of time spent where time entries were vague and unclear).

In view of the issues identified above, the Court concludes that a downward adjustment of the fees requested of 20% is warranted. Accordingly, the Court awards the Trustee his attorneys' fees in the sum of $36,229.60.

By the Court,

*[signature]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: May 5, 2016

7